UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES MONROE,                      :
                                     :CIVIL ACTION NO. 3:16-CV-2133
          Plaintiff,                 :
                                     :(JUDGE CONABOY)
     v.                              :
                                     :
MIRAMED MEDICAL GROUP, LLC,          :
                                     :
          Defendant.                 :
                                     :

FILED
SCRANTON

OCT 1 2 2017

Per_____ CTC
DEPUTY CLERK

## MEMORANDUM

Plaintiff's Renewed Motion to Amend Complaint filed on August 18, 2017, is pending before the Court. (Doc. 40.) Plaintiff files the motion pursuant to Federal Rule of Civil Procedure 15(a)(2) and asserts that granting the motion is consistent with the requirements of the rule. (Doc. 40 at 1; Doc. 41 at 2.) Defendant opposes the motion on the basis that it is "deficient and futile"--"the entirely new theory of the case [] should be denied as futile since it asserts a claim that has no good faith basis in law or fact." (Doc. 44 at 1, 5.) The Court concludes the motion is properly denied.

## I. Background

In his original three-page Complaint, Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et. seq., when it sent him a letter attempting to collect a debt. (Doc. 1 at 7 [Compl. ¶ 1].) Plaintiff pointed to the following language contained in the letter at issue:

> Our client has authorized us to report this
> matter as a collection account to a credit
> reporting agency. You are hereby notified
> that this account may be reported [sic] a
> credit reporting agency on or after fourteen
> (14) days from the date of this letter. You
> have the opportunity to prevent this from
> happening by contacting us within the next
> thirty (30) days to pay this account in full
> or agree on acceptable payment terms.

(Doc. 1 at 8 [Compl. ¶ 12].) Plaintiff avers that this language is a "threat to report to credit reporting agencies [which] is false, deceptive, and misleading." (Doc. 1 at 8 [Compl. ¶ 13].) Plaintiff identified the falsehood to be that Defendant "has never reported the Account to any of the three major credit reporting agencies" and this allegation was "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." (Doc. 1 at 8 [Compl. ¶ 14].) No further bases for the FDCPA claim were contained in the Complaint.

Plaintiff initially sought to amend his Complaint "[a]fter a deposition of a third-party credit reporting agency" (Doc. 41 at 6) with a Motion to Amend Complaint (Doc. 25) filed on May 12, 2017. The proposed Amended Complaint based the FDCPA claim on both the falsehood alleged in the Complaint and an additional allegation that Defendant misled the consumer into believing that damage to his credit would have a longer impact than it would. (Doc. 25-1 at ¶¶ 13-21.)

After the motion was fully briefed (Docs. 26, 32, 35), Plaintiff sought to amend the proposed amended complaint by

2

stipulation on August 2, 2017. (Doc. 36.) Plaintiff sought to eliminate the word "false" from paragraph 12 of the proposed amendment and the entirety of paragraphs 14, 16, and 18. (Doc. 36 at 1.) By Order of August 4, 2017, the Court rejected the attempted amendment by stipulation and directed Plaintiff to file a revised motion to amend. (Doc. 37.) The result is the Renewed Motion to Amend Complaint (Doc. 40) now before the Court.

The proposed Amended Complaint (Doc. 40-1) contains one count based on the same language in the debt collection letter sent to Plaintiff. (Doc. 1 at 8 [Compl. ¶ 12]; Doc. 40-1 at 3 [Am. Compl. ¶ 12].) Plaintiff continues to assert that the threat to report to credit reporting agencies language is "deceptive and misleading," but he no longer avers that the language is "false," an elimination related to the averment that Defendant contends it did in fact report the account to a credit reporting agency (Doc. 1 at 8 [Compl. ¶ 13-14]; Doc. 40-1 at 3 [Am. Compl. ¶¶ 13-15].) Plaintiff now bases his FDCPA claim on the premise that information in the letter regarding the authority and potential of providing a report of the account to a credit reporting agency is "deceptive and misleading information" because Defendant knew that the account would appear on Plaintiff's credit report for a much shorter time than Defendant's letter would lead a consumer to believe. (Doc. 40-1 at 3 [Am Compl. ¶ 16].) Plaintiff states that

> [b]y telling the consumer only that the
> account would be reported, without further

3

advising the consumer that the reporting would be deleted once MiraMed stopped collecting the debt, MiraMed misled the consumer into believing that the damage to the credit report would have a much longer impact than it really would.

(Doc. 40-1 at 4 [Am. Compl. ¶ 18].)

The briefing of the pending motion is now complete with the filing of Plaintiff's supporting brief (Doc. 41) on August 18, 2017, and Defendant's opposition brief (Doc. 44) on September 11, 2017. The matter became ripe for disposition on September 26, 2017, when Plaintiff failed to file a reply brief by the September 25, 2017, deadline.[1]

## II. Discussion

Plaintiff asserts that he should be allowed to file an amended complaint because leave to amend should be freely given, no party is prejudiced by the amendment, and the amendment was made in a timely manner. (Doc. 41 at 7.) Defendant responds that it will be unduly prejudiced by amendment "because it demonstrates bad faith litigation by Plaintiff in ignoring the facts that clearly defeated his original complaint and entering to continue the litigation under a proposed alternative claim that has no basis in law or fact." (Doc. 44 at 6.)

---

[1] Plaintiff filed a reply brief (Doc. 45) on October 11, 2017. The brief was not timely filed and no motion requested an extension of time or allowance for the filing. Therefore, the Court does not directly address arguments raised therein. However, having reviewed the filing, the Court concludes that the determination made here would be the same.

Federal Rule of Civil Procedure 15(a)(2) provides that leave
to amend should be freely given when justice so requires.  The
Supreme Court has explained

> [i]f the underlying facts or circumstances
> relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an
> opportunity to test his claim on the merits.
> In the absence of any apparent or declared
> reason--such as undue delay, bad faith or
> dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by
> amendments previously allowed, undue
> prejudice to the opposing party by virtue of
> allowance of the amendment, futility of
> amendment, etc.--the leave sought should, as
> the rule requires, be 'freely given.'  Of
> course, the grant or denial of an opportunity
> to amend is within the discretion of the
> District Court, but outright refusal to grant
> the leave without any justifying reason
> appearing for the denial is not an exercise
> of discretion; it is merely an abuse of
> discretion and inconsistent with the spirit
> of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Liberality of amendment
applies in cases where the plaintiff "has been less than perfect in
the preparation and presentation of a case."  *Arthur v. Maersk,
Inc.*, 434 F.3d 196, 206 (3d Cir. 2006) (citing *Foman*, 371 U.S. at
182; *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938-39 (3d
Cir. 1984)).  *Arthur* added that Rule 15(a) also "allows for
misunderstandings and good-faith lapses in judgment, so long as the
party thereafter acts reasonably and diligently."  434 F.3d at 206
(citing *Adams v. Gould*, 739 F.2d 858, 868-69 (3d Cir. 1984)).  The
Court of Appeals for the Third Circuit has interpreted the *Foman*

directives to mean that "'prejudice to the non-moving party is the touchstone of the denial of an amendment,'" *Lorenz v. SCX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978)). "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz*, 1 F.3d at 1414 (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981)).

Plaintiff asserts in his supporting brief that the factors set out by the Supreme Court and the Third Circuit favor permitting him to amend his complaint. (Doc. 41 at 8.) Defendant summarizes its opposition to amendment with the statement that amendment "is futile and it will unduly prejudice the Defendant by forcing it to spend more money to defend against a convoluted and deficient amended complaint based on a new alternative claim that is deficient on its face." (Doc. 44 at 10.)

## A. *Prejudice*

Plaintiff avers that Defendant will not be able to show prejudice because it will not be able to show that amendment will cause it to expend significant additional resources to conduct discovery and prepare for trial and Defendants have always known

6

the facts which form the basis of the amendment. (Doc. 41 at 11.) As set out above, Defendant asserts it will be prejudiced by having to spend more to defend against the amended complaint. (Doc. 44 at 10.)

In *Long v. Wilson*, 393 F.3d 390 (3d Cir. 2005), the Circuit Court endorsed factors which are appropriately considered when determining whether the non-movant will be prejudiced by amendment, including whether the opposing party will have "to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Id.* at 400. Plaintiff points to an Eighth Circuit case which noted that the "'inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party.'" (Doc. 41 at 11 (quoting *Popp Telecom v. Am. Sharecom, Inc.*, 201 F.3d 928, 943 (8th Cir. 2000)).)

Plaintiff maintains that the *Long* factors cannot be shown here because "the amendment is an elaboration on the claim originally filed. Both as originally alleged and as amended, the complaint asserts that Defendant's letter was misleading in the manner in which it implied that Plaintiff's failure to pay would impact his credit report." (Doc. 41 at 11.) Plaintiff also notes that "Defendant has always known the facts which form the basis of the amendment, as those facts are based on its own internal credit reporting policies." (*Id.*) Plaintiff also states that the timing

7

of the filing does not create prejudice because Defendant has not served written discovery requests and has not taken Plaintiff's deposition. (*Id.*)

Although Defendant asserts it will have to spend more money to defend against the amended complaint (Doc. 44 at 10), it does not elaborate on the assertion nor does it directly refute the arguments made by Plaintiff regarding prejudice (*see* Doc. 44). As presented by Defendant, prejudice in this case is directly linked to futility. (*See, e.g.,* Doc. 44 at 6, 10.)

Although the Court concludes Defendant has not shown prejudice independent of futility, the Court does not conclude that the need to defend against a new theory of the case would not cause prejudice if that theory is futile. Therefore, proceeding with a futility analysis is appropriate.

## B.    *Futility*

Plaintiff argues that the amendment is not futile because Plaintiff proposes an interpretation of the collection letter which is reasonable, and the letter is misleading and deceptive for two alternative reasons: "(1) the least sophisticated debtor does not know that negative information does not remain on his credit report indefinitely; and (2) the least sophisticated debtor does not know that negative information can be removed from a credit report after only a brief period of time." (Doc. 41 at 17.) Defendant responds that the proposed alternative claim is based upon pure speculation

and relies upon a "bizarre and unreasonable interpretation of the letter." (Doc. 44 at 6.)

When looking at whether an amendment would be futile the court considers whether "'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The court applies the same standard of legal sufficiency applied under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* (citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained the relevant standard. *Id.* at 678.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955 (brackets omitted).

556 U.S. at 678.

Pursuant to *Twombly* and *Iqbal*, the Court of Appeals for the

Third Circuit set out three steps required of a court reviewing the sufficiency of a claim in *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumptions of truth." *Id.* at 679, 129 S.Ct. 1937. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial remarks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

809 F.3d at 787.

Plaintiff alleges that Defendant violated the FDCPA, 15 U.S.C. § 1692e and e(10). (Doc. 40-1 at 4 [Am. Compl. ¶ 22].) The purposes of the FDCPA, 15 U.S.C. §§ 1692-1692p, are to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representations in connection with the collection of any debt." The section contains sixteen subsections which give

examples of conduct which would violate the general provision. *Id.* Subsection 10, which Plaintiff specifically cites, states that "[t]he use of false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" constitutes a violation of the section. 15 U.S.C. §1692e(10). "A debt collection letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Brown v. Card Service Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008).

Because the FDCPA is a remedial statute, its language is to be construed broadly and "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed using the least sophisticated debtor standard." *Brown*, 464 F.3d at 453; *see also Rosenau*, 539 F.3d at 221. The "least sophisticated debtor" standard is lower than the standard of a reasonable debtor, but "although it is a low standard, it prevents liability for bizarre and idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Rosenau*, 539 F.3d at 221 (internal quotation and citations omitted).

Plaintiff avers that the "crux of [his] amended claim is that Defendant's collection letter was misleading and deceptive" on the

11

basis of the language set out in the background section of this Memorandum. The assertion is specifically based on Defendant's statement in the letter that "[y]ou are hereby notified that this account may be reported [sic] a credit reporting agency on or after fourteen (14) days from the date of this letter." (Doc. 40-1 at 3 [Am. Compl. ¶ 12].) Plaintiff maintains the statement is misleading and deceptive because the least sophisticated debtor would not understand how long the negative item was going to remain on his credit report. (Doc. 41 at 14, 15.) Plaintiff adds that whether or not the statement is actually deceptive is not relevant, nor is the court to decide whose interpretation is more appropriate, the proper question is whether the notice the debtor received could reasonably be viewed as misleading or deceptive. (*Id.* at 15-17.)

As noted above, Plaintiff posits that the letter is misleading and deceptive on the alternative grounds that the least sophisticated debtor does not know that the negative information does not stay on his credit report indefinitely and he does not know that it can be removed from his credit report after only a brief period. (Doc. 41 at 12.) He contends that his first argument is reasonable because a survey showed that only 47 percent of consumers knew how long information could stay on their credit report and it is reasonable to treat the least sophisticated consumer as one who would have the least accurate understanding of

12

the credit reporting industry, including the lack of understanding that there is a maximum time-limit for how long information could remain on his credit report. (*Id.* at 19-20.) On this basis, Plaintiff concludes that "[b]ecause the least sophisticated debtor may not understand this facet of the credit reporting industry, Defendant's unnecessary statement that it would report Plaintiff's account to the credit reporting agencies needlessly scares the consumer." (*Id.* at 20.) Plaintiff adds that

> Defendant has never claimed that it was *required* to inform Plaintiff that it would furnish a negative credit report. Plaintiff is not aware of any statute or caselaw that would require a debt collector to make such a disclosure prior to credit reporting. Thus, it seems clear that Defendant's gratuitous reference to credit reporting was simply a collection strategy, and served no legitimate purpose other than to coerce a payment. Defendant does not even attempt to hide this motivation, as the letter explicitly states: "[y]ou have the opportunity to prevent this [credit reporting] from happening by contacting us within the next thirty (30) days to pay this account in full or agree on acceptable payment terms." (Doc. 40-1 ¶ 12.) Thus, Defendant clearly intended that the unnecessary credit reporting language would motivate consumers to make payments.

(Doc. 41 at 20-21.)

Plaintiff runs out a scenario where a least sophisticated debtor, concerned that negative information could appear on his credit report and never go away, might pay Defendant's debt over others in hopes of avoiding repercussions of a negative item on his credit report, a fear which would have been unlikely if Defendant

13

had explained that the negative information would be removed from the credit report once Defendant was no longer collecting the debt. (Doc. 41 at 22.)   Plaintiff analogizes the reasoning employed in a Northern District of Indiana case where an account had already been reported on credit reports when the debt collector sent a letter to the debtor stating that the letter served as notification that the delinquent account "'*may* be reported to the national credit bureaus." (Doc. 41 at 22 (quoting *Johnson v. Enhanced Recovery Company*, 2017 WL 168960, at *1 (emphasis added)).)[2]

*Johnson* found that "the heart of [the plaintiff's] claim" was the assertion that the defendant's letter made an offer to induce her to settle and the defendant was never going to keep up its end of the deal by not reporting the delinquency.   228 F.3d at 877. *Johnson* noted that "[i]t appears uncontested that [the defendant] never intended to adhere to such an agreement" and, on this basis, the court concluded that dismissal was inappropriate because it was a question of fact whether "a substantial number of consumers" would view the letter to have made an offer not to report the debt." *Id.*   Essential distinctions here are the lack of any alternative interpretation of specific language in the letter and the fact that there is no indication Defendant had reported the account at the time it sent the letter or intended to report the

---

[2]   The correct citation is *Johnson v. Enhanced Recovery Company LLC*, 228 F. Supp. 3d 870 (N.D. Ind. 2017).

account if Plaintiff either paid the debt or arranged a payment plan within the prescribed time. Defendant's letter did not mislead Plaintiff regarding the reporting of his account, rather, as Defendant notes, the letter "makes a truthful statement about the possibility of credit reporting the debt" (Doc. 44 at 7).

Plaintiff also points to *Johnson* for support based on the finding "'[b]y offering (or appearing to offer) a consumer a way to keep one delinquency off her credit report, a debt collector might get itself bumped to the top of her list of payments.'" (Doc. 41 at 23 (quoting *Johnson*, 228 F. Supp. 3d at 878).) Plaintiff's reliance is again misplaced in that the quoted language is found in the discussion of the materiality of the allegedly misleading statement following the court's conclusion that the plaintiff's interpretation of the letter was plausible. 228 F. Supp. 3d at 876-78. Without a plausibility finding, materiality is not an issue. Plaintiff simply has not made the initial plausibility showing--his interpretation of the letter as misleading and deceptive on the basis that the least sophisticated debtor might reasonably believe that he would never recover from the black mark on his credit report is not supported by this record or the caselaw cited.[3]

---

[3] Acceptance of Plaintiff's position that the letter lacked essential information could open the door to requiring a debt collector to provide voluminous credit reporting *industry* law and policy to the debtor--such a result would hamper rather than assist the least sophisticated debtor from understanding the situation he

Plaintiff's argument that the letter is misleading because "the least sophisticated debtor would interpret that offer as one which would prevent negative information from being reported for a period of years, rather than a period of months" (Doc. 41 at 26) is deficient for similar reasons, including reliance on the quotation from *Johnson's* materiality discussion (*see id.*). As noted above, without an antecedent finding that Plaintiff's interpretation is plausible, materiality is not pertinent.

In sum, the Court concludes on this record that the least sophisticated debtor would not reasonably interpret the letter to include a durational element related to the potential reporting of his account to a credit reporting agency. Thus, the reporting language cannot be considered deceptive or misleading. Because the theory on which Plaintiff's proposed Amended Complaint (Doc. 40-1)

is in and potential ways to ameliorate that situation.

Plaintiff's assertion that the language at issue was not required is also not helpful to his futility argument. He states in his supporting brief that the reporting language was not required in the letter and was included to "motivate consumers to make payments" (Doc. 41 at 20-21); he states in his reply brief that "[t]he best practice would be to simply avoid making any reference to credit reporting in the letter" (Doc. 45 at 7). First, nothing in law or common sense prohibits a debt collector from motivating consumers to make payments on delinquent accounts as long as the motivation is not an "abusive debt collection practice." 15 U.S.C. § 1592(e). Second, informing a debtor that his account may be reported and he has an opportunity to avoid that negative consequence of his account delinquency can appropriately be considered beneficial to the debtor, particularly a "least sophisticated debtor." Finally, the Court's inquiry is not about "best practice[s]" (Doc. 45 at 7)--whether the information was misleading or deceptive is at issue.

is based is not plausible, allowing leave to amend would be futile. Therefore, Plaintiff's motion is properly denied.

### III. Conclusion

For the reasons discussed above, Plaintiff's Renewed Motion to Amend Complaint (Doc. 40) is denied. An appropriate Order is filed simultaneously with this action.

RICHARD P. CONABOY
United States District Judge

DATED: Oct. 12, 2017